**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| Irene Makler, | : |
|  | : |
|  | : |
| Plaintiff, | : |
| v. | : Civil Action No.: _____ |
|  | : |
| CAB Asset Management, LLC; and | : |
| Richmond University Medical Center | : |
|  | : |
| Defendants. | : |
|  | : |
|  | : |

## CLASS ACTION COMPLAINT

Plaintiff Irene Makler, by and through her undersigned counsel, pleading on her own

behalf and on behalf of all others similarly situated, states as follows:

### JURISDICTION AND VENUE

1.      Plaintiff, Irene Makler, by and through her undersigned counsel, seeks redress for

violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.*, the Telephone

Consumer Protection Act, 47 U.S.C. §227, et seq., New York General Business Law § 349, and

for breach of the covenant of good faith and fair dealing by the Defendants and their agents in

their illegal efforts to collect a consumer debt.

2.      This action arises primarily out of Defendant CAB Asset Management, LLC's

violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.* ("FDCPA") against

the Plaintiff and class members.  Pursuant to 15 U.S.C. §1692k(d), this Court has jurisdiction

over actions arising out of violations of the FDCPA.

3.      Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over all

other claims in this action, as all such claims arise out of the same case or controversy that is

1

described herein.  The allegations against Richmond University Medical Center arise out of the same case an controversy that gives rise to the federal claims.

4.       Pursuant to 28 U.S.C. §1391(b), venue is proper in this District, as Plaintiff resides in this District and a substantial part of the events or omissions giving rise to this claim occurred in this District.

## PARTIES

5.       The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

6.       The Plaintiff, Irene Makler ("Plaintiff"), is an adult individual residing in Staten Island, NY, and is a "consumer" as the term is defined by 15 U.S.C. §1692a(3).

7.       Defendant, CAB Asset Management, LLC ("CAB"), is a foreign entity based in the State of Maryland with a principal executive office at 8725 Loch Raven Blvd Ste 205B, Towson, MD 21286-2207.

8.       Defendant RUMC is a university hospital with administrative offices located at 355 Bard Avenue, Staten Island, NY 10310.

9.       The Plaintiff allegedly incurred a financial obligation in the approximate amount of $1,665.00 (the "Debt") to Richmond University Medical Center (hereinafter "RUMC" or "Creditor") in connection with a medical procedure that the Plaintiff underwent in 2008.  The alleged Debt arises from RUMC's failure to properly bill the Plaintiff's insurance, and for its failure to notify the Plaintiff of any outstanding bill.  Because of its own mistakes and its failure to properly investigate an outstanding bill, RUMC kept the alleged Debt on the Plaintiff's account for years and thereafter passed it to Defendant CAB, a third-party debt collector.

10.     Upon information and belief, the Debt was purchased, assigned, or transferred by the Creditor to Defendant CAB, or Defendant CAB was employed by the Creditor to collect the alleged Debt.

11.     Defendant CAB is a "debt collector" as the term is defined by the FDCPA.  *See* 15 U.S.C. § 1692a(6).  The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  *Id.*

12.     As of July 1, 2013, the Maryland Department of Assessment and Taxation listed CAB as an entity not in good standing.  At the time of the violations described herein, CAB was not authorized to engage in any business activities.

13.     Defendant CAB does not have a debt collector license, as required by New York City Administrative Code §20-490.  *See* N.Y.C. Admin. Code § 20-489.  Defendant falls within the definition of "debt collection agency" as defined in N.Y.C. Admin. Code   §20-489(a).

14.     Defendant CAB is not authorized to do business in the State of New York.  As of July 1, 2013, and as of the date of this Complaint, the New York State Department of State, Division of Corporations, contains no entry for Defendant CAB.

**FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS**

15.     The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

### The Debt

16.     The Plaintiff allegedly incurred a financial obligation in the approximate amount of $1,655.00 (the "Debt") to RUMC related to a medical procedure that occurred on or about March 17, 2008.

17.     Plaintiff provided proof of proper insurance through her primary doctor to RUMC months prior to the procedure.

18.     Without the Plaintiff's knowledge, a Debt was incurred after the procedure.  Upon information and credible belief, the Plaintiff's insurance was never properly billed for the procedure, and the Plaintiff was not properly informed about the Debt.

19.     RUMC did not make reasonable efforts inform the Plaintiff of the alleged Debt; RUMC failed to bill the correct insurance company; and because of RUMC's mistakes and lack of reasonable care, it passed the Debt to a third-party debt collector without the Plaintiff's knowledge.

20.     The alleged Debt was purchased, assigned, or transferred to Defendant CAB for collection, or Defendant CAB was employed by RUMC to collect the alleged Debt.

21.     Under the FDCPA,  the term "debt" refers to "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  15 U.S.C. § 1692a(5).  The Plaintiff is alleged to owe an obligation which meets the definition of a "debt" under the FDCPA.

**CAB Engages in Harassment and Unfair Practices**

22.     On or about May 8, 2013, Defendant CAB contacted the Plaintiff to collect the Debt.  Defendant CAB called the Plaintiff at her home and left a voicemail on her answering machine.

23.     The message was prerecorded, and consisted of an artificial voice.  The message stated, in part, "my name is Judy, we are attempting to locate an address for Irene Makler in regards to a matter I have received in my office . . ."  (The Plaintiff received the same message a month later on her cell phone, even after already speaking with an agent for CAB.)

24.     On or about May 8, 2013, the Plaintiff called the telephone number that was left on her voicemail *via*  the above-stated message and spoke to an agent who identified himself as "Dillon" from CAB, hereinafter referred to as "CAB Agent."

25.     The CAB Agent told the Plaintiff that he had called in regards to a Debt incurred through RUMC in 2008.  The CAB Agent told Plaintiff that the Debt is too old to dispute even if it was an error.

26.     When the Plaintiff asked for more information, the CAB Agent said that his company does not have records and cannot send her any documents.

27.     To date, the Plaintiff has not received any written correspondence from Defendant CAB.

28.     On July 1, 2013, the Plaintiff received another call on her cellular phone.  This call was answered by the Plaintiff, whereupon the Plaintiff heard a message was almost identical to the message described in paragraph 23; the statements were made with an artificial, pre-recorded voice (i.e. a robo-call), and upon information and belief, was made from an automatic

dialing machine.  Defendant CAB had already spoken with the Plaintiff, and had no reason to place a robo-call that was allegedly seeking location information.  This call was made solely for the purpose of harassment.

29.     The Plaintiff received approximately three additional calls between July 2, 2013, and July 3, 2013, from Defendant CAB.  The calls were essentially identical to the calls described in paragraphs ¶¶ 23 and 28.

30.     Defendant CAB, failed to send Plaintiff any notice of her rights in writing five days after initial contact; and Defendant CAB failed to advise the Plaintiff of her right to dispute the Debt.

**Richmond University Medical Center Engages in Deceptive Practices**

31.     Before the Debt was transferred, sold, or sent for collection to CAB, RUMC failed to provide the Plaintiff any notice that a Debt existed.  When the Plaintiff had her procedure in 2008, she was fully insured and RUMC had all the necessary insurance information.  If the Plaintiff was properly informed that there was a balance on her account (i.e. a Debt), she would have made every effort to resolve the issue.  Instead, the RUMC failed to provide the Plaintiff any notice, and failed to properly bill insurance.

32.     At the beginning of May, after receiving a call from CAB, the Plaintiff called RUMC and inquired about the alleged Debt.  She was informed that RUMC no longer has any records and RUMC cannot provide her with any documents regarding the alleged Debt.

33.     On June 7, 2013, Plaintiff called RUMC again regarding the Debt and spoke to an agent named Jackie M.  The agent claimed that billing statements were sent to Plaintiff after the medical procedure, but admitted the statements were sent to an incomplete address that did not have an apartment number.

34.     Upon information and belief, RUMC billed the wrong insurance and mailed statements to the wrong address.   RUMC failed to exercise any amount of care or professionalism in its billing and notification procedures.  RUMC let an alleged Debt stay on its books for years without making proper attempts to reach the Plaintiff, and merely passed that Debt off to a debt collector who engaged in harassment.

35.     Upon information and belief, the Defendant intentionally failed to alert Plaintiff that of any purported outstanding bill.

## CLASS ACTION DEFINITIONS AND ALLEGATIONS

36.     Causes of action alleged in this Complaint for Count I, *infra*, are brought on behalf of the Plaintiff and the members of similarly situated classes.  The Plaintiff proposes classes to be defined as follows:

a.  **Class A: All consumers who reside in the State of New York that  1) Defendant CAB contacted within one year preceding the filing of this Complaint, and 2) Defendant CAB failed to notify said consumers of their rights in writing five days after initial contact as required by the FDCPA 15 U.S.C. §1692g(a).**

b.  **Class B: All consumers who resided in the City of New York that were contacted by Defendant CAB within one year preceding the filing of this Complaint while the Defendant did not have a debt collector license as required by N.Y.C. Admin. Code §20-490.**  The Defendant's engagement of debt collection activity without a valid license violates the FDCPA § 1692e(5) and NYGBL §349.

    c. **Class C: All consumers that were contacted by Defendant CAB within one year preceding the filing of this Complaint while CAB was a dissolved entity (and/or an entity not in good standing for any other reason) that was not permitted to engage in any business other than the winding up of its affairs.** Defendant CAB's engagement of debt collection activity while it lacked any legal status violates several provisions of the FDCPA, including §§1692e(14), 1692e, and 1692(f).

37.    Pursuant to Federal Rule of Civil Procedure 23, a class is appropriate and preferable in this case because:

    a. Based on the fact that routine telephone calls by an unlicensed entity are at the heart of class claims, the class is so numerous that joinder of all members is impracticable.

    b. The claims of the Plaintiff for these causes of action are typical of those of the defined class members. All the claims that would fall within the class definitions are based on the same facts and legal theories.

    c. The Plaintiffs will fairly and adequately represent the class members' interests. The Plaintiffs have retained counsel experienced in bringing class actions and collection abuse claims.

    d. There are questions of law and fact common to the class and these questions predominate over any questions affecting only individual class members. The principal questions presented by class claims are whether the Defendant CAB was authorized to collect debts, and whether Defendant violated the FDCPA in its debt collection practices by failing to

8

send appropriate notices to the Plaintiff and class members as required by 15 U.S.C. 1692(g)(a).

e.   Identification of the consumers that were contacted while the Defendant was unlicensed or dissolved, and identification of the consumers who did not receive the appropriate notices from Defendant CAB is a matter that can best be determined from the Defendant's records.

f.   The precise number of consumers in this class is unknown at this time and can only be discerned through discovery.  However, upon information and belief, Defendant CAB is hired by RUMC and other creditors to collect on alleged debts regarding the accounts of hundreds or thousands consumers in New York and elsewhere. Therefore, the members of the class are believed to be so numerous that joinder of all members is impractical.

g.   The claims of the Plaintiff for this cause of action are typical of those of the class members.  All are based on the same facts and legal theories.

h.   The Plaintiff will fairly and adequately represent the class members' interests.  The Plaintiff has retained counsel experienced in bringing class actions and collection abuse claims.  The Plaintiff's interests are consistent with those of the members of the class.

i.   A class action is superior for the fair and efficient adjudication of the class members' claims.  Congress specifically provided, at 15 U.S.C. §1692k, for the commencement of class actions as a primary means of enforcing the FDCPA.

    j.   Absent a class action, most members of the class would find the cost, time, and ability of engaging in protracted litigation prohibitive.

    k.   The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the court and the litigants and promotes consistency and efficiency of adjudication.

    l.   Prosecution of separate actions could result in inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the Defendants and other debt collectors.

    m.  The amount of damages at issue is such that proceeding by way of a class action is the most economical and sensible manner to vindicate the injuries sustained by Plaintiff and the other members of the class.

38.    The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

**Plaintiff Suffered Actual Damages as a Result of CAB's Actions**

39.    The Plaintiff, individually and not as a class member, has suffered and continues to suffer actual damages as a result of the Defendants' unlawful conduct.

40.    As a direct consequence of the Defendant's acts, practices, and conduct, the Plaintiff suffered and continues to suffer from humiliation, anger, anxiety, and embarrassment.

**COUNT I**
**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. § 1692, et seq.**

41.     The Plaintiff incorporates by reference all of the above paragraphs of this

Complaint as though fully stated herein.

42.     The Defendant CAB's conduct violated 15 U.S.C. §1692e(11) in that Defendant

failed make proper disclosures as required by the FDCPA.

43.     The Defendant CAB's conduct violated 15 U.S.C. §1692e(10) in that Defendant

used a false and deceptive means to collect a debt.

44.     The Defendant CAB's conduct violated 15 U.S.C. §1692e(14) in that Defendant

did not use its true name as its name was forfeited when the entity was dissolved and/or when its

good standing status was lost.

45.     Defendant CAB's conduct violated 15 U.S.C. §1692g(a) in that Defendant failed

to send the Plaintiff any written notice containing the amount of the debt, the name of the

creditor, and information on the Plaintiff's right to dispute the Debt within five (5) days of its

initial contact.

46.     Defendant CAB's conduct violated 15 U.S.C. §1692e in that Defendant used false,

deceptive, or misleading representations directed at the Plaintiffs and similarly situated class

members.

47.     Defendant CAB's conduct violated 15 U.S.C. §1692f in that Defendant engaged

in activity directed at the Plaintiffs and class members the natural consequence of which was to

harass and oppress the Plaintiffs.

48.     Defendant CAB's conduct violated 15 U.S.C. §1692e(11) in that Defendant failed to make the required disclosures in its communications with the Plaintiffs and similarly situated class members.

49.     The Defendant CAB's conduct violated 15 U.S.C. §1692f(1) and 15 U.S.C. §1692(e)(5) by attempting to collect an amount, not authorized by law, that was incurred as a result of Creditor's own improper actions.

50.     The Defendant CAB's conduct violated 15 U.S.C. §1692d in that Defendants engaged in activity the natural consequence of which was to harass and oppress the Plaintiff and class members.

51.     The foregoing acts and omissions of the Defendant CAB constitute numerous and multiple violations of the FDCPA against the Plaintiff and class members, including every one of the above-cited provisions.

52.     The Plaintiff is entitled to damages as a result of Defendant CAB's violations.

## COUNT II
## DEFENDANT CAB's VIOLATIONS OF
## THE TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C. § 227, et seq.

53.     Upon information and belief, Defendant CAB's used an automatic dialing system to place calls to the Plaintiff.  An automatic dialing system is defined in 47 U.S.C. § 227(a)(1) as equipment that has the capacity to dial and "to store or produce numbers to be called, using a random or sequential number generator."

54.     Defendant CAB's conduct violated 47 U.S.C. § 227(b)(1)(A)(iii) in that Defendant used an automatic dialing system to call Plaintiff's cellular phone several times without Plaintiff's express permission.

55.     The foregoing acts and omissions of the Defendant constitute a clear and manifest violation of the TCPA.

56.     The Plaintiff is entitled to damages as a result of Defendant CAB's violations.

## COUNT III
## DEFENDANTS' VIOLATIONS OF
## NEW YORK GENERAL BUSINESS LAW § 349

57.     The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

58.     New York General Business Law § 349 prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service" in the State of New York.

59.     By acting as a medical health provider, Defendant RUMC conducts "business" or provides a "service" within the meaning of New York General Business Law § 349.

60.     By acting as a debt collector, Defendant CAB conducts "business' or provides a "service" within the meaning of New York General Business Law § 349.

61.     Defendant RUMC engaged in deceptive acts and practices in connection with the business and services it provided to the Plaintiff by: 1) never informing the Plaintiff that she had a past due amount, 2) failing to properly bill the Plaintiff's insurance and notify the Plaintiff that there were any problems with insurance, 3) failing to properly send the Plaintiff any billing statements, 4) sending an alleged past due amount to collections and exposing the Plaintiff to credit reporting and collection harassment without properly investigating the account, and 5) failing to provide the Plaintiff with any documents pertaining to the past due amount even upon the Plaintiff's recent request.

62.    The aforementioned acts and omissions by RUMC were deceptive and misleading in a material sense.

63.    The aforementioned acts and omissions by RUMC caused injury to the Plaintiff.

64.    Defendant CAB engaged in deceptive acts and practices by virtue of the acts and omissions described in paragraphs ¶¶22-30.  The aforementioned acts and omissions by CAB 1) were deceptive and misleading in a material sense, and 2) caused injury to the Plaintiff and class members.

65.    By reason of the conduct alleged above, Defendants engaged in deceptive conduct in violation of New York General Business Law § 349.

## COUNT IV
## RICHMOND UNIVERSITY MEDICAL CENTER'S BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

66.    The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

67.    The Plaintiff made an agreement with Defendant RUMC to receive medical treatment.  The Plaintiff  provided RUMC with proper health insurance information.

68.    Upon information and belief, RUMC's duties are detailed in the Patient's Bill of Rights as required by the State of New York, and/or in a contract or agreement to perform medical procedures in exchange for payment.

69.    Implied within any agreement between the Plaintiff and RUMC were the covenants of good faith and fair dealing.  As such, each party had a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with discharging contractual performance and other duties according to the contracts terms, prohibits a party from taking an action or

making any omission or engaging in any conduct which would have the effect of destroying or injuring the other party's right to obtain the benefits prescribed by the terms of the contract.

70.     By not contacting Plaintiff regarding any amount due, and thereafter sending the Plaintiff's account to collections, and failing to provide the Plaintiff with any documents about the alleged Debt, Defendant RUMC denied the Plaintiff her ability to make a fair and accurate accounting of her obligations to RUMC and/or dispute the alleged Debt and make arrangements to clarify any problems.

71.     By not contacting Plaintiff regarding any amount due, and thereafter sending the Plaintiff's account to collections, Defendant RUMC denied the Plaintiff her ability to make proper payments on her account.

72.     Based on the aforementioned acts and omissions, the Defendant RUMC has breached the implied covenant of good faith and fair dealing.

73.     The Plaintiff has sustained damages as a result of Defendant RUMC's breach of the implied covenant of good faith and fair dealing.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays that judgment be entered against the Defendants:

1.  Awarding the Plaintiff actual damages including, but not limited to, the emotional distress and economic loss the Plaintiff has suffered and continues to suffer as a result of the intentional, reckless, and/or negligent FDCPA violations pursuant to 15 U.S.C. §1692k(a)(1);

2.  Awarding the Plaintiff and class members statutory damages pursuant to 15 U.S.C. §1692k;

3.  Awarding the Plaintiff and class members actual and/or statutory damages pursuant to New York General Business Law § 349 against Defendants;

4.  Awarding the Plaintiff the greater of actual monetary loss or $500.00 (for each call placed in violation of the TCPA), pursuant to 47 U.S.C. §227(c)(5) against Defendant CAB;

5.  Awarding the Plaintiff costs of litigation and reasonable attorneys' fees pursuant to 15 U.S.C. §1692k(a)(3); and

6.  Granting such other and further relief that the Court may deem just and proper.

## TRIAL BY JURY DEMANDED ON ALL COUNTS

Dated:  July 5, 2013

Respectfully submitted,

By:  /s/ Hashim Rahman
Hashim Rahman, Esq.
Rahman Legal
155 Water Street
Brooklyn, NY 11201
hrahman@rahmanlegal.com
Phone: (347) 433-6139
Fax: (347) 382-9457